Nott, J.
I concur with a majority of my brethren, that a new trial ought to be granted in this case; but not for all the reasons assigned by niy brother Gantt. I agree, that the diligence *44 spoken of in the books relative to negotiable instruments, is applicable to them only, when negociated in the usual course of commercial transaction, before they become due. But, nevertheless, the endorsee of a note of hand to whom it is endorsed, after it becomes due, must use some effort to get the money from the drawer of the bill, or payer of the note, before he can resort to the endorser. The endorsement is a bill of exchange drawn on the maker of the note; and the condition of the endorsement, is, that he shall call on the maker for payment, or use due diligence to do so. If the law has not settled what shall be due diligence in sueh a case, the parties may make it what they please. And having, by express stipulation, settled what degree of diligence should be used, I think the parol evidence to that point ought to have gone to the Jury. It did not contravene the legal operation of the endorsement. The endorser is not in any case the unqualified security for the payment of the money. He only becomes so in the event of non-payment by the drawer, after due diligence; and that due diligence is whatever the parties choose to make it.
The evidence which went to control the legal effect of the endorsement, I think, was properly rejected.
GrimM, J. I concur with the above.
*45 Cheves, J.
This is a case of considerable importance, as it goes to affect two leading principles of law; and with just deference for the opinions of my brethren, who are of opinion that a new trial should be granted, I think to put doctrines, which had been long and wisely settled, afloat. It can do no more; for the judgment of the Court in this case can decide nothing but the case, and that only for the particular occasion, as the Court is equally divided on the principle: though a new trial must be granted, as under the late act of the Legislature my opinion can have no influence on this decision. The brief contains many grounds, but the following only have been relied upon in argument :
1st. Because the presiding Judge misdirected the Jury, in stating to them that none of the doctrines of the law, in relation to diligence on the part of the endorsee, and reasonable notice to the endorser, were applicable to this case, as the note was endorsed after it became due.
2d. Because it was not proved that the plaintiff ever made á demand of the maker of the note, nor that he could not be found.
3d. Because the presiding Judge refused to receive parol evidence of the contract of endorsement, to show it to be different from the legal import of the written endorsement, which evidence was not repugnant; to, but iff furtherance of, the same.
*46 1st. I never had any doubt on this point. I found it the established law of the Courts of South Carolina, when I became a student of law; and from that time to the present, I have never known it to be disputed. And the practice in which it was my fate to be engaged, was such as brought many cases of the kind daily before the Courts in which I practised, and would necessarily have brought up the question, if the case had been susceptible of a doubt. I am sure there is no case and no doctrine in the books, which prescribes the notice and diligence of which this ground of the motion speaks. I am perfectly aware, that an insulated sentence may be found in any of the authorities on negotiable paper, which, if taken alone, may bear such a meaning. Thus it is said, in 1 Selwin, p. 407, “ Where a note is payable to order and endors-. ed, the endorser is considered as the warranter of the note; and, therefore, it is necessary, in an action brought against an endorser, to allege and prove a demand of the maker, and notice of the default or refusal to pay within a reason-, able time.” Here the language is general: but the authority referred to is Tindal vs. Brown, (1 T. Rep. 167;) and upon reference to that case, it is seen to be a case where the endorse-, ment was made before the note became due, So, in 1 Esp. N. P. Gould's edit. p. 97, it is said, “ The endorsee must show also that he used due diligence to make the demand from the maker* *47 of the note; and such demand, if it can be made, shall not be dispensed with.” Here again the proposition is general: but the case quoted to support it, is Collins vs. Butler, 2 Stra. 1087; which is the case of a note endorsed before it was due; and so, I venture to say, will be found all the cases in the books, unless the case of Hall vs. Smith, (1 Bay's Rep. 324,) be an exception: but I cannot consider it as one, because it professes to be governed by the cases in the English books, and if it differs from them, it must have been from a misconception of them. But I desire no clearer authority to establish the doctrine for which I contend, than the opinion of Mr. Justice Bay in that case, which lays down the rule with perfect precision and truth. He says, he grounds his opinion principally “ on the circumstance of the note being endorsed after it became due, which made all the rules respecting due diligence inapplicable.'1'1
Chitty, (195,) in laying down the rule relative to demand of payment, says, “ It is settled that the holder of a bill must present it to the drawee for payment when due, when a time of payment is specified, and when no time is expressed within a reasonable time after the receipt of the bill, &c.” Thus every thing of an affirmative kind to be found in the books on this subject, will be found to relate to endorsements of notes or bills not due, or, in other words, not yet dishonoured. And nothing will be found which prescribes diligence in the demand, or in the *48 notice of refusal or default to pay, where the bill or note was dishonoured before it was transferred. In the latter case the reason ceases. Diligence and notice are required, that the drawer of a bill of exchange, who is presumed to draw on funds he has in the hands of the drawee, and the endorser of apromissory note, who has given value to the maker of it for its amount, may take measures according to their own judgment, for their own security against a danger, of which, without such diligence and notice, they would be unapprised: nay, morer without which they would be lulled into security, in the belief that the bill or note had been duly honoured in the course of business, and according to custom. But it is otherwise, when the bill or note has been already dishonoured — the drawer or endorser already has all the notice which in other cases is required. His case is then exactly, that of a drawer or endorser, after a demand duly made and notice of default duly given; after which, nothing will discharge him but payment of the note or bill, unless the holder give time to those on whom the drawer or endorser is entitled to have recourse. No delay or indulgence, which is merely passive, will discharge him.
2d. It might, perhaps, have been a question, were it res integra, whether, if the pleadings were adapted to the case, it would be necessary to prove a demand and notice, at any time, where *49 the note is endorsed after it becomes due. But it has been decided by this Court, in the case of Ecfert vs. Des Cowdres & Co. that a demand is necessary. The pleadings, too, generally state a demand, and therefore it is necessary to prove it. But it seems formerly not to have been required, even where the instrumént was transferred before it was due. • Mr. Kyd (p. 120) says, speaking of the commercial policy which required a demand of payment to be made, on notice of default, to be given with reasonable diligence, that “ so little was it Understood at the beginning of this century, within what time payment was to be demanded, that cases are reported of actions brought against the drawer, several years after the bills were due, and without demand from the drawee.” But this is only mentioned for illustration. 1 admit, a demand was necessary, and that proof of that demand should have been given on the trial, or that the plaintiff had made a reasonable endeavour to make that demand, and had failed. I think evidence was given that a reasonable endeavour was made On two occasions. On the first, the plaintiff’s agent did not go to the maker’s house; but when very near it, (within 3 miles,) he was informed he was not at home. It is said he got his information from a stranger. Of whom else could he inquire ? He resided himself 120 miles from the place, and every one, of whom he could inquire, would of course be a stranger to him. If he had gone to his *50 house, and spoken to the deserted. Walls, the law would probably have been satisfied. But, instead of such a senseless ceremony, he made another endeavour. On this occasion, the maker had removed 40 or 50 miles from his former residence. He followed him thither, — inquired for him in the most public place in the district into which he was said to have removed, and of every person whom he met. If the witness was entitled to belief, was not this a reasonable endeavour ? His credibility was not doubted, and the question was distinctly and fairly submitted to the J ury, whether a reasonable and diligent endeavour had or had not been made to find the maker ; and they have, by their verdict, answered affirmatively. We every day refuse to set aside verdicts, under such circumstances.
3. The last ground is the rejection, of the parol testimony which was offered, to vary the legal effect of the endorsement. The general rule is, “ That parol evidence cannot be admitted to contradict, add to, or vary the terms of a will, deed, or other written instrument.” (Phillips, 423.) Two mistakes sometimes prevail — certainly not among the profession, for that would be an impeachment of their learning — first, that the rule only applies to deeds; and secondly, that if the testimony do not directly contradict the terms of the instrument, it is admissible; but the rule also applies to every written document, and forbids the introduction oí parol testimony to add to or vary the terms *51 it. Now if the ground of the motion under consideration be recurred to, and I have stated it precisely from the brief, it will be found to be, u That the presiding Judge refused to receive parol evidence of the contract of endorsement, to show it to he different f rom the legal import of the written endorsement, &c.” On the parties’ own showing, then, ought not the question to be at an end ? You shall not vary, add to, or contradict the terms of the written instrument. But if the testimony is to prove the contract to be different from the legal import of the endorsement, must it not contradict, add to, or vary it ? How else can it show it to be different ? Thus the question stands on the counsel’s own statement But this ought not to govern the question, if the case be really otherwise. The testimony rejected was to prove that, at the time of the endorsement, and as a part of the contract of endorsement, the plaintiff, before he resorted to the defendant on that endorsement, was to bring suit, and proceed thereon to judgment and execution, and fail to recover by legal proceedings, and from the time of such failure to wait three years. Let this evidence be compared with the legal import and effect of the endorsement. If the testimony contradict, add to, or vary that impoi’t and effect, it was inadmissible. If not, it ought to have been received. The legal import and effect of the endorsement are, to authorize the maker to pay, and the endorsee to receive, the contents of the *52 note, according to its tenor and effect, w*^ & promise on the part of the endorser, that if the maker do not pay on demand, he, the endorser, will pay the contents of the note, on demand being made of him. By the endorsement, all the plaintiff undertook to do was to demand payment of the maker. By the alleged parol agreement, he was to bring suit, obtain judgment, issue execution, and have of course the execution returned nullá hona. Does this not add to, vary, or contradict the effect of the endorsement ? Again, by the endorsement the plaintiff is entitled immediately after the demand of the maker, and default of payment by him, to resort to the defendant. But by the alleged parol agreement, he is not only to wait the result of a suit, judgment, and execution; but he is to wait three years beyond that event. Does this not contradict,, vary, or add to the effect of the endorsement ? If I do not suffer more than a Babelonish confusion of language and ideas, I think I may venture to say, the parol evidence does contradict, add to, and vary the legal import and effect of the endorsement.
What thus appears to be the result of fair reasoning, is confirmed by authority. Thus, in an early case, where it was attempted to show that a contract of insurance was different from that stated in the policy, Lord Chief Justice Pemberton (Phillips, 433) declared the evidence to he inadmissible, saying, it should no more be allowed, “than he who subscribes a hill of ex *53 change,, payable at such a day, shall be allowed to go from it, and say, it was agreed to be on condition, &c. when it maybe that the bill had been negotiated.” Now there are but two possible distinctions which can be taken between the case here put as being beyond all dispute, and the case now before us. The 1st is, that the case. put is grounded upon the bill having passed into the hands of third parties, who were ignorant of the parol agreement; but though that reason is given by way of confirmation, it is not all the foundation of the principle : for in a case between the maker and the payee of the note, the maker was not permitted to show, by parol proof, that, at the time of making the note, it was agreed between him and the plaintiff that it should be renewed, and that payment should not be demanded 'on its becoming due. (Phillips, on Evidence, 433, and the cases there quoted.) The 2d distinction which I deem possible, is, that the case of an endorsement is different from a note. It will be only necessary to show, that every endorsement is, in effect, a new note, or bill. Thus Chitty says, (p. 116,) “ It is said to be equivalent, in its effects, to the drawing of a bill, the endorser being in almost every respect as a new drawer on the original drawee.” My brethren, who think this testimony admissible, I understand, do not agree on the same grounds. Two of them (my brothers Grimke and Gantt) think the whole admissible. The other (my bro *54 ther JYott), only that part which stipulated proceedings by suit, because he thinks, as I have understood him, this was an engagement independent of the contract of endorsement, to use diligence not required by law, and that parol evidence of an independent engagement is admissible. That parol evidence of an independent engagement is admissible, I admit. But this is only a correct conclusion from premises neither granted nor proved. The testimony, in point of fact, was part of the contract of endorsement, as alleged by the witnesses, and not independent of it; and so it is alleged to be in the grounds of the motion, and let it be called what it may, it is contradictory, adds to, and varies the legal effect of the endorsement, as it establishes new and variant duties on the part of the endorsee, and postpones his redress. In short, I think there is not a shade of difference between this part of the rejected testimony, and that which is said to have stipulated a further delay of three years.
Tdeem it unnecessary to say any thing in reply to arguments on the impolicy of the rule. It is borne up on the authority of ages of acquiescence and happy experience; and those Judges whom we most revere for their learning and judgment, have given it their sanction and support, and have regretted any relaxations of it which may have taken place. But we every day *55 acknowledge it as authority j and have rigidly adhered to it in a case (M‘Dowell vs. Bickley) decided at the present sitting of this Court.
Colcock and Johnson, J, concurred with Justice Cheves,